## NEW ENGLAND FISH CO. et al. v. VAARA et al.
### No. 6377–A.

United States District Court,
D. Alaska. First Division. Juneau.
Dec. 27, 1950.

FOLTA, District Judge.

The Alaska Unemployment Compensation law, Section 51–5–1 to 20, A.C.L.A. 1949, requires employers to contribute to the unemployment compensation trust fund 2.7% of the payrolls for each quarter, less such experience rating credits as they may be entitled to while there exists in the trust fund a surplus, which, as defined by Section 51–5–5(c)(1)(G), is the lesser of (1) that amount by which the moneys in the trust fund, as of the cut-off date, exceed four times the amount of contributions paid on or before the cut-off date with respect to the payrolls reported by all employers on or before said cut-off date for the preceding calendar year; or, (sic) (2) an amount equal to 60% of the contributions so paid for the preceding calendar year. It is further provided that the surplus must amount to at least 10% of the amount of the contributions paid on the payrolls reported by all employers on or before the cut-off date for the preceding calendar year. In other words, the surplus which is distributable in credits is the excess over either (1) the product of

four times the previous year's contributions or (2) 60% of the total contributions for the preceding year, whichever is the lesser, provided that such excess in either case equals at least 10% of such contributions.

Plaintiffs allege that on the cut-off date fixed by the defendants, March 15, 1950, there was $9,397,006.93 in the trust fund and $1,370,519.14 in contributions, resulting in not only an excess of $3,914,930.30 over the product of four times the contributions, but also in an amount which greatly exceeded 60% of the contributions, the minima established by the act; that, although plaintiffs requested that the order fixing the cut-off date be vacated and the plaintiffs given the credits to which they would be entitled for the third and fourth quarters of 1950, the request was denied and plaintiffs were required to make full payment of 2.7% of their payrolls for the third quarter.

Plaintiffs further allege that in making the computation of the surplus in the trust fund, the defendants erroneously added to the contributions paid the amount of credits and multiplied that sum, instead of the total of all contributions, by four, thereby rendering unavailable for distribution as credits the sum of $3,914,930.37 for the year commencing July 1, 1950; and plaintiffs pray that defendants be required to recompute the aforesaid surplus in accordance with the formula prescribed by Chapter 74, S.L.A.1947, Section 51–5–5(c)(1)(G) A.C.L.A.1949, and distribute the surplus by way of credits.

■ It is clear, therefore, that the question which is decisive of this controversy is as to the meaning of the term "surplus" as used in the act, which in turn depends upon the meaning to be accorded the term "contributions paid". The plaintiffs contend that the surplus consists exclusively of cash contributions paid into the fund of all the employers for the preceding calendar year, whereas the defendants contend that both cash and credits constitute "contributions" in the determination of surplus. Since contributions for the period involved total $1,370,519.14 and credits $1,016,413.49, it is manifest that if the two are added to make $2,386,932.63, under defendants' theory there would be no distributable surplus, whereas under the plaintiffs' theory $882,311.48 would be available for credits for the year beginning July 1, 1950 and the amount of contributions required to be paid correspondingly reduced. Section 51–5–1 provides that:

"As used in this Act, unless the context clearly requires otherwise—

\* \* \* \* \* \*

"(d) 'Contributions' means the *money payments* to the Alaska unemployment compensation fund required by this Act." and Section 51–5–5 provides that:

"(G) 'Surplus' means the lesser of:

"(1) That amount by which the moneys in the Unemployment Compensation Trust Fund, as of the cut-off date, exceed four times the amount of *contributions paid* on or before the cut-off date with respect to the payrolls reported by all employers on or before said cut-off date for the preceding calendar year, or

"(2) an amount equal to sixty per cent (60%) of the *contributions so paid* for the preceding calendar year. No portion of the surplus shall be credited to any employer unless the amount of the surplus is at least ten per cent (10%) of the amount of the *contributions paid* on the payrolls reported by all employers on or before the cut-off date for the preceding calendar year." (Emphasis supplied.)

From the foregoing, it appears reasonably clear that the language employed leaves no room for construction because there is nothing to construe. But the defendants argue that in view of the declared objective of the act in the preamble to Chapter 4, E.S., L.A.1937, to relieve economic insecurity due to unemployment by encouraging employers to provide more stable employment and by providing for a systematic accumulation of funds during good times for use in poor times and the fact that under plaintiffs' theory fluctuations in the surplus, with consequences never intended by the legislature, would result, the defendants' view should be adopted.

There is much plausibility and force to the argument that contributions should

comprise both cash payments and credits if fluctuations in the fund are to be avoided and some degree of constancy attained, but in demonstrating, in such convincing fashion, the desirability of such a result and of measuring the benefit potential by the payroll totals, the defendants have also demonstrated that the legislature failed to use language expressive of the intent which defendants urge upon the Court, despite the fact that it would have been easy to provide that surplus should include credits given as well as contributions paid. Indeed, it is inconceivable that the legislature left the language stand in the belief that "contributions paid" and "money payments" included credits, for in no sense could it be said that such credits are "paid". This is not a case of an unhappy choice of words of doubtful or vague meaning or the use of terms of art, but rather a case in which the meaning of the language used is clear and certain. Such an omission can not be supplied by the Court under the guise of construction without encroaching upon the legislative function.

Nor does the clause "unless the context clearly requires otherwise" in Section 51–5–1 warrant a different conclusion. Defendants' argument on this point apparently proceeds on the assumption that "context" is to be construed as coterminous with the text of the act, but I am inclined to believe that it is the immediate rather than the remote company in which the words are found by which their meaning must be judged. There is nothing in the context of paragraph (d) of Section 51–5–1 defining "contributions" as *money payments,* or in subdivision (c)(1), paragraph (G) of Section 51–5–5, defining surplus as consisting of *"contributions paid"*, which can be said to clearly require that the definition of these terms be enlarged to include credits.

■ The case, then as I see it, is one in which the Commission has attempted to supply an obvious omission by administrative construction in order to give the act the effect which it undoubtedly should have. Laudable as this may be, however, such power has not been lodged in the Com-

mission or the Court. It is exclusively a legislative function on which no encroachment can be made by the judicial or executive branches.

In my opinion the doctrine of estoppel urged by the defendants is not applicable to a situation such as the one here dealt with.